**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

<table>
<tr>
<td>IN RE PRESS COALITION'S MOTION<br>FOR ACCESS TO COMMUNITY<br>SERVICE RECORDS</td>
<td>Case No.</td>
<td>Case: 1:21–mc–00155<br>Assigned To : Lamberth, Royce C.<br>Assign. Date : 12/1/2021<br>Description: Misc.</td>
</tr>
</table>

## MOTION FOR ACCESS TO COMMUNITY SERVICE RECORDS

Pursuant to Local Criminal Rule 57.6, Cable News Network, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Buzzfeed, Inc. d/b/a BuzzFeed News, CBS Broadcasting Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Gannett Co., Inc., Gray Media Group, Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, Pro Publica, Inc., Tegna, Inc., and WP Company LLC, d/b/a the Washington Post (together, the "Press Coalition") respectfully move for an order releasing certain post-conviction records submitted to this Court in *United States v. Morgan-Lloyd*, Case No. 21-cr-164-RCL-1 regarding Defendant Anna Morgan-Lloyd.  Specifically, the Press Coalition seeks the release of records reflecting how Defendant has completed the 120 hours of community service that the Court ordered her to perform as a condition of her probation (the "Community Service Records").  The Press Coalition's interest in this matter, a statement of the relevant facts, and a specific prayer for relief are each set forth in the accompanying Memorandum of Points and Authorities.

### REQUEST FOR HEARING

The Press Coalition respectfully requests a hearing on this Motion.

Dated:  December 1, 2021          Respectfully submitted,

                                  BALLARD SPAHR LLP

                                  /s/ *Charles D. Tobin*
                                  Charles D. Tobin (#455593)
                                  Maxwell S. Mishkin (#1031356)
                                  Lauren Russell (#1697195)
                                  1909 K Street, NW, 12th Floor
                                  Washington, DC 20006
                                  Telephone: (202) 661-2200
                                  Fax: (202) 661-2299
                                  tobinc@ballardspahr.com
                                  mishkinm@ballardspahr.com
                                  russelll@ballardspahr.com

                                  *Counsel for the Press Coalition*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| IN RE PRESS COALITION'S MOTION FOR ACCESS TO COMMUNITY SERVICE RECORDS | Case No. |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE PRESS**
**COALITION'S MOTION FOR ACCESS TO COMMUNITY SERVICE RECORDS**

BALLARD SPAHR LLP

Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren Russell (#1697195)
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballarspahr.com

*Counsel for the Press Coalition*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND ........................................................................................................................2

I. The Capitol Riot.............................................................................................................2

II. Defendant Anna Morgan-Lloyd.....................................................................................3

III. The Sentencing Hearing and Subsequent Developments ...................................................4

ARGUMENT ..............................................................................................................................6

I. The Community Service Records Are Judicial Records Subject To The Common Law Right Of Access ....................................................................................7

II. The Hubbard Factors Support Public Access To The Community Service Records .........................................................................................................................9

CONCLUSION.........................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Johnson v. Greater Southeast Community Hospital Corp.*,
    951 F.2d 1268 (D.C. Cir. 1991) ..................................................................10

*Leopold v. United States*,
    964 F.3d 1121 (D.C. Cir. 2020) ...................................................................9

*MetLife, Inc. v. Financial Stability Oversight Council*,
    865 F.3d 661 (D.C. Cir. 2017) ....................................................................6

*In re Nichter*,
    949 F. Supp. 2d 205 (D.D.C. 2013) .................................................. *passim*

*United States v. Hubbard*,
    650 F.2d 293 (D.C. Cir. 1980) ....................................................................7

*United States v. Munchel*,
    2021 U.S. Dist. LEXIS 194604 (D.D.C. Oct. 8, 2021).................... *passim*

*United States v. Munchel*,
    991 F.3d 1273 (D.C. Cir. 2021) ..............................................................1, 10

*Vanda Pharm., Inc. v. FDA*,
    --- F. Supp. 3d ---, 2021 U.S. Dist. LEXIS 86682 (D.D.C. May 6, 2021)...............................11

*Washington Legal Foundation v. U.S. Sentencing Commission*,
    17 F.3d 1446 (D.C. Cir. 1994) ....................................................................8

**Statutes**

18 U.S.C. § 3563 ..................................................................................................7

18 U.S.C. § 3564 ..................................................................................................8

18 U.S.C. § 3565 ..................................................................................................8

18 U.S.C. § 3601 ..................................................................................................8

18 U.S.C. § 3602 ..................................................................................................8

18 U.S.C. § 3603 ..........................................................................................6, 8, 12

## PRELIMINARY STATEMENT

The public interest in this case did not end when the Court sentenced Defendant Anna Morgan-Lloyd for her role in the assault on the United States Capitol.  Indeed, given the "grave danger to our democracy," the public interest in transparency remains through every phase as the Court administers justice to those complicit in "the violent breach of the Capitol on January 6." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).

To ensure maximum transparency in this historically important prosecution, Cable News Network, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Buzzfeed, Inc. d/b/a BuzzFeed News, CBS Broadcasting Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Gannett Co., Inc., Gray Media Group, Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, Pro Publica, Inc., Tegna, Inc., and WP Company LLC, d/b/a The Washington Post (together, the "Press Coalition") now seek access to certain post-conviction records submitted to this Court regarding the punishment of Defendant Anna Morgan-Lloyd. Specifically, the Press Coalition seeks the release of records reflecting how Defendant has completed the 120 hours of community service that the Court ordered her to perform as a condition of her probation.  These records (the "Community Service Records") are judicial records subject to a presumption of access under the common law, and there are no countervailing interests here to rebut that strong presumption.

The need for contemporaneous, comprehensive access to these Community Service Records is especially great here, for two reasons: (1) Morgan-Lloyd was the first defendant to be sentenced for participating in the Capitol riot, and thus her sentence serves as a bellwether for the

dozens if not hundreds more such cases that will follow, and (2) shortly after apologizing to this

Court for her actions on January 6, Defendant downplayed the riot on national television, raising

doubts about the sincerity of her contrition and of her acknowledgment that she owes a debt to

the community.  *See* Mary Kay Mallonee & Devan Cole, *Capitol rioter downplays attack after*

*apologizing for her crimes in court*, CNN (June 25, 2021), https://www.cnn.com/2021/06/

25/politics/anna-morgan-lloyd-downplays-capitol-riot/index.html.  Public access to information

detailing how Defendant completed her community service would shed light on the genuineness

of her remorse and the degree to which probation serves as a fair and just response to the events

of January 6.  The Court should therefore recognize the common law right of access to these

Community Service Records and immediately make them available to the public.

**BACKGROUND**

## I.     The Capitol Riot

On January 6, 2021, thousands of rioters stormed the United States Capitol in a "blatant

and appalling disregard for our institutions of government and the orderly administration of the

democratic process."  *See Director Wray's Statement on Violent Activity at the U.S. Capitol*

*Building*, FBI (Jan. 7, 2021), https://www.fbi.gov/news/pressrel/press-releases/director-wrays-

statement-on-violent-activity-at-the-us-capitol-building-010721.  In response, federal law

enforcement agencies "deployed [their] full investigative resources . . . to aggressively pursue

those involved in criminal activity."  *Id.*  The Department of Justice has since charged nearly 700

defendants, including Morgan-Lloyd, with crimes committed during the Capitol riot.  *See, e.g.*,

*Capitol Breach Cases*, Dep't of Justice, https://www.justice.gov/usao-dc/capitol-breach-cases.

## II.      Defendant Anna Morgan-Lloyd

On February 23, 2021, the Government charged Morgan-Lloyd with breaking into and engaging in disorderly conduct inside the U.S. Capitol.  *See* Crim. Compl., Dkt. 1.  On May 27, 2021, Defendant agreed to plead guilty to one count of "Parading, Demonstrating, or Picketing in a Capitol Building" in violation of 40 U.S.C. § 5104(e)(2)(G).  Plea Agreement at 1, 9, Dkt. 24; Statement of Offense in Supp. of Guilty Plea at 5-6, Dkt. 25.

Defendant filed her sentencing memorandum on June 15, 2021, asserting that "a sentence of Probation, with 40 hours of community service and an Order of Restitution of $500.00 is a just and fair sentence."  Mem. in Supp. of Probationary Sentence at 1, Dkt. 20.  Defendant stated that "[o]nce [she] understood the destruction and lawlessness of many who entered the U.S. Capitol, she was upset, contrite and remorseful."  *Id.* at 2.

The Government filed its sentencing memorandum two days later, on June 17, 2021, stating that January 6 would "forever be an infamous day in American history," and that Defendant committed a "serious violation of the law" for which she "must be held accountable." Gov't Mem. in Aid of Sentencing at 1, Dkt. 22.  The Government nevertheless asserted that "a probationary sentence of three years, along with certain conditions" was "an appropriate sentence."  *Id*.  The Government requested several discretionary conditions of probation, including that Defendant "work in community service for 40 hours as directed by the Court."  *Id.* at 8.  The Government's rationale for recommending probation and not incarceration included that Defendant had "expressed . . . an important level of contrition for her actions."  *Id.* at 9.  The Government advised the Court that "40 hours of community service" was "an important part of promoting respect for the law and imposing a just punishment," and that community service would give Defendant "the opportunity to make a positive contribution to the community."  *Id*.

On June 23, 2021, the parties filed their plea agreement with the Court in which they agreed to "jointly recommend that the Court impose a sentence of probation and 40 hours of community service."  Plea Agreement at 2, Dkt. 24.  The parties acknowledged, however, that "the sentence to be imposed is a matter solely within the discretion of the Court."  *Id*. at 3.

### III.    The Sentencing Hearing and Subsequent Developments

That same day, June 23, 2021, the Court held a hearing and sentenced Defendant to three years of probation, 120 hours of community service, and a $500 restitution payment.  *See* Judgment at 4, Dkt. 29.  The Court emphasized that probation would not be the "automatic outcome" in the Capitol riot cases, *see* Ex. A. (June 23, 2021 Hr'g Tr.) at 19:11-14, but credited Defendant's contrition in this particular case, observing that Defendant was "horrified" at what she saw and that she "walked out of [the Capitol] knowing what [she] saw was wrong."  *Id*. at 20:7-10.[1]

In contrast to the contrition expressed at her sentencing hearing, just two days later, Defendant appeared on *The Ingraham Angle*, a nationally-televised news program, and stated that she did not see anyone "damage anything," that people were "polite" during the riot, and that "nobody was breaking anything."  *See 'The Angle' speaks to the first person sentenced for Jan 6 Capitol riots*, Fox News (June 25, 2021), https://video.foxnews.com/v/6260923294001#sp=show-clips, at 02:23-02:48.  Asked whether January 6 was an "insurrection," Defendant demurred: "I can only talk about the area I was in, and I don't believe it."  *Id*. at 02:59-03:10.

---

[1] *See also* Spencer S. Hsu and Rachel Weiner, *In sentencing regretful Capitol protester, federal judge rebukes Republicans*, The Washington Post (June 23, 2021), https://www.washingtonpost.com/local/legal-issues/captiol-riot-first sentence/2021/06/23/8b2825d8-d39c-11eb-ae54-515e2f63d37d_story.html.

On September 10, 2021, this Court issued a Memorandum Opinion and Order in another Capitol riot case, denying that defendant's motion for release from custody.  *See* Mem. Op., *United States v. Chansley*, No. 21-cr-3-RCL, Dkt. 74.  The Court acknowledged an "evolution in [that defendant's] thinking from the virulent statements he made immediately after the January 6 Capitol riot . . . to his acceptance of responsibility at his plea-agreement hearing," and expressed "hope[] that [the defendant's] change of heart is sincere."  *Id.* at 7-8.  The Court in that case observed that Defendant Morgan-Lloyd's television appearance contradicted her contrite demeanor before the Court, noting that its "hopes have been recently dashed when, a day after sentencing, another January 6 defendant made statements in an interview that directly conflicted with the contrite statements she made to the undersigned."  *Id.* at 8 n.4.

On October 28, 2021, Defendant Morgan-Lloyd's attorney—then representing another Capitol riot defendant in a proceeding before Chief Judge Beryl A. Howell—similarly said that she was "shocked" by the *Ingraham Angle* interview and that she felt "betrayed."  *See* Ex. B (Oct. 28, 2021 Hr'g Tr., *United States v. Griffith*, No. 21-cr-204-BAH-4) at 60:19-21.[2]  Chief Judge Howell observed, in reference to Morgan-Lloyd, that "[t]here have been other defendants who, at the time of sentencing, have expressed remorse, that they gained some civic literacy by reading books; and then, as soon as they're sentenced to a probationary period, they downplay their criminal conduct on January 6th."  *See id.* at 57:21-58:1.

In response, Defendant Morgan-Lloyd's defense attorney contended that Morgan-Lloyd had been "played" by the interview, asserted that the interview did not indicate "a lack of

---

[2] *See also* Jordan Ficher et al., *Indiana grandmother 'played' by Fox News in Ingraham Angle interview, attorney says*, WUSA9 (Oct. 28, 2021), https://www.wusa9.com/article/news/national/capitol-riots/indiana-grandmother-anna-morgan-lloyd-played-by-fox-news-in-ingraham-angle-interview-attorney-says/65-a609c28a-0abe-406d-ad60-4daa89517ff4.

remorse," and represented to the court that Morgan-Lloyd had "completed her 120 hours of community service within a month." *Id*. at 59:10-13, 60:5-7. After this exchange, the Chief Judge stated that the "pages of the transcript" documenting it would be sent to this Court for review. *Id.* at 61:10-11.

The judiciary's understandable doubts about the sincerity of Defendant's expressed contrition, especially in light of the importance that contrition played in her sentencing, warrants a full public accounting of Defendant's court-ordered community service. This includes how and where she provided it. These details are indispensable to both a public evaluation of Morgan-Lloyd's sincerity and a public assessment of whether probation, as a general matter, is a fair and just response to the events of January 6. No matter its conclusions, the public has a right to know.

Federal law requires officers of the U.S. Probation and Pretrial Services System to remain informed about how probationers are complying with the conditions of their probation, and to "report [that] conduct and condition to the sentencing court." 18 U.S.C. § 3603(2). The Press Coalition brings this motion for access to the Community Service Records – that is, any reports that Probation and Pretrial Services has or is required to provide to this Court about Defendant's compliance with this condition of her probation – to shed light on this vital but hidden aspect of the judicial process.

## ARGUMENT

The Community Service Records to be provided to the Court are subject to the common law right of access. In this Circuit, courts conduct a two-step analysis to assess a common law right of access motion. First, courts determine whether the records at issue are "judicial records" to which there is a "strong presumption" in favor of access. *MetLife, Inc. v. Fin. Stability*

*Oversight Council*, 865 F.3d 661, 665-67 (D.C. Cir. 2017) (Garland, J.).  If they are judicial records, courts apply the six-factor test set out in *United States v. Hubbard* to conclude whether the presumption of access is rebutted.  650 F.2d 293 (D.C. Cir. 1980).  Here, the Community Service Records—which are directly connected to an unprecedented episode in American history—are judicial records, and the *Hubbard* factors weigh in favor of access.

**I.**     **The Community Service Records Are Judicial Records Subject To The Common Law Right Of Access**

The Community Service Records are subject to the common law right of access because they are judicial records that have a role to play in judicial decision-making.  Federal probation originated with the Probation Act of 1925, which "gave the courts the power to suspend the imposition or execution of sentence and place defendants on probation for such period and on such terms and conditions as they deemed best."  *See* Administrative Office of the United States Courts, *Probation and Pretrial Services History*, https://www.uscourts.gov/services-forms/probation-and-pretrial-services/probation-and-pretrial-services-history.  Today, federal probation falls directly under the auspices of the judiciary: the Judicial Conference of the United States administers U.S. Probation and Pretrial Services, and federal law grants courts broad discretion over the probation process.  *See, e.g.*, *Overview of Probation and Supervised Release Conditions* at 5 n.8, Admin. Office of the U.S. Courts Probation and Pretrial Services Office (Nov. 2016), https://www.uscourts.gov/sites/default/files/overview_of_probation_and_supervised_release_conditions_0.pdf.

Specifically, federal law provides that courts may provide discretionary conditions of probation, *see* 18 U.S.C. § 3563(b)(1)-(23); courts may "modify, reduce, or enlarge the conditions of a sentence of probation," *see id.* § 3563(c); courts may "terminate a term of probation previously ordered and discharge the defendant at any time in the case of a

7

misdemeanor . . . if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice," *see id.* § 3564(c); courts may "extend a term of probation, if less than the maximum authorized term was previously imposed," *see id.* § 3564(d); and courts may continue or revoke probation after a hearing "[i]f the defendant violates a condition of probation . . . prior to [its] expiration or termination," *see id.* § 3565(a)(1)-(2).

Federal law further requires that a "person who has been sentenced to probation . . . be supervised by a probation officer to the degree warranted by the conditions specified by the sentencing court." *Id.* § 3601. The court is charged with appointing probation officers and the "order of appointment shall be entered on the records of the court." *Id.* § 3602(a)-(b). The probation officer must then "keep informed, to the degree required by the conditions specified by the sentencing court, as to the conduct and condition of a probationer" and must "report [that] conduct and condition to the sentencing court." *Id.* § 3603(2). Finally, a probation officer must "perform any other duty that the court may designate." *Id.* § 3603(10).

Given this statutory framework, it is no surprise that the D.C. Circuit has characterized the Probation Service as an "entity in the judicial branch." *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994). And though the D.C. Circuit has not yet addressed whether probation records submitted *after* sentencing are judicial records, this Court has concluded that Presentence Investigative Reports ("PSRs")—reports which "aid the sentencing court in carrying out its function" before a sentence is delivered—are subject to the right of access. *In re Nichter*, 949 F. Supp. 2d 205, 208 (D.D.C. 2013) (Lamberth, J.). Acknowledging that PSRs are "presumptively confidential," this Court nevertheless stated that "PSRs are court documents, and the district court may release them at its discretion," *id.*, and the Court ultimately released the PSRs due to the "compelling public interest" in them, *id.* at 210.

8

Reports that probation officers submit to the court pursuant to 18 U.S.C. § 3603(2) relating to the "conduct and condition" of a probationer are, like PSRs, judicial records that aid this Court in "carrying out its function." *See Nichter*, 949 F. Supp. 2d at 208. Specifically, such reports will inform the Court's decision whether to modify, reduce, or enlarge probation conditions under 18 U.S.C. § 3563(c); whether to terminate probation under 18 U.S.C. § 3564(c); whether to extend probation under 18 U.S.C. § 3564(d); or whether to continue or revoke probation after a hearing if the probationer "violates a condition of probation prior to [its] expiration or termination" under 18 U.S.C. § 3565(a)(1)-(2). Reports on the "conduct and condition" of a probationer thus have a significant "role [to] play[] in the adjudicatory process." *Leopold v. United States*, 964 F.3d 1121, 1128 (D.C. Cir. 2020) (Garland J.) (internal marks omitted). Probation records furnished to the Court under 18 U.S.C. § 3603(2) are therefore judicial records to which the public has a "strong presumption" of access under the common law.[3]

## II.    The *Hubbard* Factors Support Public Access To The Community Service Records

Because the public has a presumptive right of access to the Community Service Records, the Court should release them unless the Government can rebut that presumption through the six-factor *Hubbard* test. *See, e.g.*, *United States v. Munchel*, 2021 U.S. Dist. LEXIS 194604, at *7 (D.D.C. Oct. 8, 2021) (Lamberth, J.). Those factors are:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and

---

[3] This Court has emphasized the consequential role it plays in the probation process in this very case: "And I say to [the Defendant] if I get a report of violation and I find a violation [of your probation], you come with your bag packed because my only question is how long I'm sending you back to jail for." *See* June 23, 2021 Hr'g Tr. 24:11-14.

> (6) the purposes for which the documents were introduced during the judicial proceedings.

*Id.* at *7-8 (quoting *Leopold*, 964 F.3d at 1131). The party objecting to release bears the burden of demonstrating that the *Hubbard* factors rebut the strong presumption in favor of public access to judicial records. *See Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1278 (D.C. Cir. 1991) (the party opposing access must "come forward with specific reasons why the record, or any part thereof, should remain under seal").

Here, no party opposing release could rebut the strong presumption of access to these records under the *Hubbard* test. To the contrary, the *Hubbard* factors roundly support granting this motion and releasing the records at issue.

**Factor 1: The Need for Public Access.** The public has an overwhelming need for access to Defendant's Community Service Records in this case. As this Court recognized in *Nichter*, which concerned a motion to unseal PSRs from the prosecution of G. Gordon Liddy and others connected to the Watergate scandal, providing access to records "publicizing actions that threatened the very nature of our system of government" advances "a compelling public interest." 949 F. Supp. 2d at 210; *see also id.* ("Our history of open trials and public identification of defendants puts society on notice that crimes do not go unpunished and illegal acts cannot be hidden from the community."). Here, too, the Community Service Records ultimately arise out of events that the D.C. Circuit has described as a "grave danger to our democracy." *Munchel*, 991 F.3d at 1284. Access to these records therefore advances the bedrock principle that high-profile criminal activity warrants heightened public scrutiny of the justice system. *See Nichter*, 949 F. Supp. 2d at 210 ("In high profile public corruption cases in particular, the publication of court records, even those that would normally remain under seal, places politicians and their allies on notice that they will be held responsible for their actions.").

While that public interest applies in all of the cases arising out of Capitol riot, access to the Community Service Records is particularly important in this case because the sincerity of Defendant's contrition, which played a role in her sentencing, remains in doubt.  Whether Capitol riot probationers are "play[ing]" the court, as Chief Judge Howell put it,[4] is a legitimate question that access to information regarding those probationers' conduct and condition may help to answer.  In short, the need for public access to these records is significant, and it is not outweighed by any of the other *Hubbard* factors, whether taken individually or in the aggregate.

**Factor 2: The Extent of Previous Public Access.**  Because there has been no previous access to the Community Service Records, the second *Hubbard* factor is neutral.  *See, e.g.*, *Vanda Pharm., Inc. v. FDA*, --- F. Supp. 3d ---, 2021 U.S. Dist. LEXIS 86682, at \*20 (D.D.C. May 6, 2021) ("the second *Hubbard* factor is neutral where there has been no previous access") (internal marks omitted).

**Factor 3: The Existence and Identity of an Objector.**  It remains to be seen whether, having considered the Press Coalition's arguments, either the Government or Defendant will object to the disclosure of the Community Service Records.  But because Factor 3 is the only *Hubbard* factor that could even arguably weigh against disclosure, if the Government and Defendant both choose to object, the *Hubbard* factors will not, on balance, rebut the strong presumption of access under the common law.  *See Munchel*, 2021 U.S. Dist. LEXIS 194604, at \*15 (noting that when "the only party to object is the defendant, courts in this district have concluded that this factor weighs in favor of disclosure," and that "when the government is a party to the case—and supports public access to the judicial record—this further strengthens the case for access") (citations omitted).

---

[4] *See* Jordan Ficher et al., *supra* n.2.

**Factor 4: The Strength of Any Asserted Privacy or Property Rights.** Under Factor 4, "disclosure is discouraged where there is a possibility of 'public humiliation and degradation' that would 'constitute an unconscionable invasion of privacy' to innocent third persons." *Munchel*, 2021 U.S. Dist. LEXIS 194604, at \*16 (quoting *In re Application of NBC*, 653 F.2d 609, 620 (D.C. Cir. 1981)). Records reflecting where and how Defendant performed her required community service hours will not give rise to such concerns. Indeed, much of Defendant's personal history is already a matter of public record in both her own and the Government's sentencing memoranda. *See* Dkt. 18; Dkt. 20. Moreover, any legitimately private information in the records can be redacted. *See, e.g.*, *Nichter*, 949 F. Supp. 2d at 210 (allowing the Government to redact "medical and psychological information of living individuals" where "disclosure of this information would provide no benefit to the public"). Narrow redactions of undisclosed private information, if needed, would strike a proper balance between the intense public interest in these records and Defendant's potential privacy interests.

**Factor 5: The Possibility of Prejudice.** Factor 5 "addresses whether defendants' rights in this proceeding will be prejudiced by release," *Munchel*, 2021 U.S. Dist. LEXIS 194604, at \*19, and releasing the Community Service Records cannot possibly prejudice Defendant in this proceeding. If Defendant fails to meet any conditions of her probation, she may face modification or revocation thereof, but that consequence would arise from the Court's own assessment of the Community Service Records, not from public access to those records. *See supra* n.3.

**Factor 6: The Purpose of the Records at Issue.** As federal law requires, probation officers report to the Court for the purpose of judicial evaluation of a probationer's conduct and condition. *See* 18 U.S.C. § 3603(2). Because the Court receives this information to inform its

decisions as to a probationer's status vis-à-vis the terms of their probation, and not for some improper purpose, this factor also favors disclosure. *See, e.g.*, *Munchel*, 2021 U.S. Dist. LEXIS 194604, at *22 n.4 ("[T]he relevant question is why the documents were submitted to the Court—i.e, to influence a court decision and not for another improper purpose.").

In sum, out of the six *Hubbard* factors, four strongly favor disclosure, one is neutral, and one remains to be determined. As the common law requires, and given the historic importance of transparency in this case, the Court should grant the Press Coalition's motion for access and release the Community Service Records immediately.[5]

## CONCLUSION

For the foregoing reasons, the Press Coalition respectfully requests that the Court grant this motion and release the Community Service Records immediately.

Dated:  December 1, 2021          Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren Russell (#1697195)
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballarspahr.com

*Counsel for the Press Coalition*

---

[5] In *Nichter*, this Court did not apply the traditional *Hubbard* factors to the petition for access to PSRs, but rather required the party seeking disclosure "to show a compelling need for disclosure to meet the ends of justice that outweighs the privacy interests of the defendant and the policy interests of the court." 949 F. Supp. 2d at 209 (internal marks omitted). For all the same reasons discussed above, the Press Coalition also satisfies that test.

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of December 2021, I caused true and correct copies of

the foregoing to be served via electronic mail and U.S. Mail on the following:

Joshua Seth Rothstein
U.S. Department of Justice
Criminal Division
555 4th St NW
Washington, DC 20530
joshua.rothstein@usdoj.gov

*Counsel for the United States*


H. Heather Shaner
LAW OFFICES OF H. HEATHER SHANER
1702 S Street, NW
Washington, DC 20009
hhsesq@aol.com

*Counsel for Defendant Anna Morgan-Lloyd*


/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)

Exhibit A

1
          UNITED STATES DISTRICT AND BANKRUPTCY COURTS
                FOR THE DISTRICT OF COLUMBIA

2

3
UNITED STATES OF AMERICA       Criminal No. 21-CR-00164

4
       v.                Washington, D.C.

5
ANNA MORGAN-LLOYD,         June 23, 2021

6
          Defendant.     2:30 p.m.

7
------------------------/

8
      TRANSCRIPT OF GUILTY PLEA AND SENTENCING
     BEFORE THE HONORABLE ROYCE C. LAMBERTH

9
         UNITED STATES DISTRICT JUDGE

10
APPEARANCES:

11
For the Government:    United States Attorney's Office
                    By: JOSHUA ROTHSTEIN, ESQUIRE

12
                    555 Fourth Street, NW
                    Washington, D.C.  20530

13

14
For the Defendant:     Federal Public Defender for the
                    District of Columbia

15
                    By: HEATHER SHANER, ESQUIRE
                    625 Indiana Avenue, NW

16
                    Suite 550
                    Washington, D.C. 20004

17

18

Court Reporter         Lisa K. Bankins RMR FCRR RDR

19
                    United States District Court
                    District of Columbia

20
                    333 Constitution Avenue, NW
                    Washington, D.C. 20001

21

22

23
Proceedings recorded by mechanical stenography,
transcript produced by notereading.

24

25

                                          1

1    day would still participate in the demonstration if it was

2    peaceful.

3           And Martin Luther King when he was demonstrating

4    wanted it to be peaceful.  He never fought the police.

5    The police fought him.  He never fought the police.  But

6    when he was arrested then, he expected to pay the penalty.

7    He wrote his letters from the Birmingham Jail because he

8    knew he was going to pay the penalty and he proudly paid

9    the penalty.

10           Some of my defendants in some of these other

11    cases think that there's no consequence to this.  And

12    there is a consequence.  And it bothers me to -- I don't

13    want to create the impression that probation is the

14    automatic outcome here because it's not going to be.

15           And I'm especially troubled by the accounts of

16    some members of Congress that January 6th was just a day

17    of tourists walking through the Capitol.  I don't know

18    what planet they were on, but there are millions of people

19    in this country that saw what happened on January 6th and

20    that saw what you saw and what you just described a

21    disgrace to our country.

22           And I'm very supportive of the efforts of Chief

23    Judge Beryl Howell to make sure that these tapes are

24    released now that have been placed in evidence.  We

25    haven't been able to have the press in our courtrooms for

most of these proceedings and tapes were made available
that have not been publicly displayed.  We are getting
them out as best we can now and it will show the attempt
of some congressmen to rewrite history and say this was
all just tourists walking through the Capitol is utter
nonsense.

And you saw it for yourself.  You just said it.
And you were horrified at what you saw and within a few
minutes, you walked out of there knowing what you saw was
wrong.

There's the right to demonstrate in our country
and I am not saying that people have to in order to plead
guilty have to say that they had no right to demonstrate.
They did.  But they had no right to go in the Capitol
unlawfully and there has to be a penalty of doing that.
And they had no right to disrupt the functioning of the
government, to stop the Congress from even sitting that
day.  They had no right and there has to be a penalty for
that and that penalty would have been on the individual
case, the individual person, what is happening with that
case.

But I just think these are troublesome cases for
the Court.  I think yours turns out to me to be an easy
case and you made it easy by the approach you've taken
from the beginning.

1    here what I always say when I impose probation.  Probation

2    comes once in a lifetime in my courtroom.  This is your

3    once.  I say to every defendant I put on probation, I

4    don't transfer your probation supervision to another

5    district.  I hold it.  Many judges transfer it.  I don't.

6    I'm the judge you face if you violate probation.  I'm the

7    one that decides what happens to you if you violate

8    probation.  I don't let anybody else get involved.  I'm

9    the one you face.  You know, I'm the one that's going to

10   have it.

11              And I say to you if I get a report of violation

12   and I find a violation, you come with your bag packed

13   because my only question is how long I'm sending you back

14   to jail for.  It's not whether you are going.  It's how

15   long you are going to be in jail if you violate a

16   condition of probation.  I have a very simple rule.  And

17   many judges don't revoke.  I always revoke.

18              So I always say at time of sentencing on

19   probation, it comes once in a lifetime, believe me.  And

20   Ms. Shaner can tell you because she's had clients that

21   didn't believe me when I said it and her clients have

22   learned sometimes.  Ms. Shaner is an excellent lawyer.

23   You lucked out in who you got for your lawyer.

24              THE DEFENDANT:  Yes.

25              THE COURT:  She drives me crazy sometimes, but

1                    <u>CERTIFICATE OF REPORTER</u>

2

3            I, Lisa K. Bankins, an Official Court Reporter

4    for the United States District and Bankruptcy Courts for

5    the District of Columbia, do hereby certify that I

6    reported, by machine shorthand, in my official capacity,

7    the proceedings had and testimony adduced upon the guilty

8    plea and sentencing in the case of the United States of

9    America versus Anna Morgan-Lloyd, Criminal Number

10   21-CR-00164, in said court on the 23rd day of June, 2021.

11

12           I further certify that the foregoing 28 pages

13   constitute the official transcript of said proceedings, as

14   taken from my machine shorthand notes, together with the

15   backup tape of said proceedings to the best of my ability.

16

17           In witness whereof, I have hereto subscribed my

18   name, this 24th day of June, 2021.

19

20

21                              Lisa K. Bankins

22                              Lisa K. Bankins
                                Official Court Reporter
23

24

25

Exhibit B

```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,          )  Criminal Action
                                   )  No. 21-204-04
vs.                                )
                                   )
JACK JESSE GRIFFITH,               )  October 28, 2021
                                   )  11:10 a.m.
              Defendant.           )  Washington, D.C.
    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF SENTENCING**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT CHIEF JUDGE**

**APPEARANCES:**

```
FOR THE GOVERNMENT: JAMIE CARTER
                    555 4th Street, NW
                    Washington, DC 20530
                    (202) 252-6741
                    Email: jamie.carter@usdoj.gov

                    JAMES PEARCE
                    U.S. DEPARTMENT OF JUSTICE
                    950 Pennsylvania Ave NW
                    Washington, DC 20530
                    (202) 532-4991
                    Email: james.pearce@usdoj.gov

                    MITRA JAFARY-HARIRI
                    DOJ-USAO
                    211 W. Fort Street
                    Detroit, MI 48226
                    (313) 226-9632
                    Email: mitra.jafary-hariri@usdoj.gov

FOR THE DEFENDANT:  H. HEATHER SHANER
                    1702 S Street, NW
                    Washington, DC 20009
                    (202) 265-8210
                    Email: hhsesq@aol.com

ALSO PRESENT:       ROBERT WALTERS, U.S. Probation

Court Reporter:     Elizabeth Saint-Loth, RPR, FCRR
                    Official Court Reporter
```

Proceedings reported by machine shorthand, transcript
produced by computer-aided transcription.

1            This is not a person who strikes me as somebody

2      who was so uneducated or unsophisticated.  I mean, he's got

3      his high school degree.  He went on to higher education.  He

4      intentionally made his way from Tennessee to D.C. on

5      January 6th; and he described his action as:  The calvary is

6      coming.  He said he wanted to storm the Capitol, which he

7      then did.

8            So it was not impulsive conduct; and so it's hard

9      for me to accept your description that this was "impulsive"

10     as opposed to totally consistent with his plan, his

11     intentional travel, and what he did when he got here.

12           And he evidenced the same mindset even after his

13     arrest, in talking about a stolen presidential election in

14     November 2020.  So that mindset that motivated his conduct

15     on January 6th is what has prompted the government to say

16     that not just general deterrence, but specific deterrence

17     for this defendant is required in this case.

18           So I -- you know, I have a hard time accepting

19     that his conduct on January 6th was simply "impulsive" or

20     "uninformed."

21           And I have to say, you know, there have been other

22     January 6th defendants who, at the time of sentencing, have

23     expressed remorse, that they have gained some civic literacy

24     by reading books; and then, as soon as they're sentenced to

25     a probationary period, they downplay their criminal conduct

1    on January 6th.  Because, you know what, judges are just

2    human; we can get played.

3              MS. SHANER:  Your Honor --

4              THE COURT:  But no one likes that.

5              MS. SHANER:  I don't blame you.

6              I assume you are referring to Anna Lloyd who went

7    on Laura Ingraham.

8              THE COURT:  That is precisely what I am talking

9    about.

10              MS. SHANER:  The day she did that she contacted

11   counsel and sent a letter to counsel to give to Judge

12   Lamberth.  She was played by Laura Ingraham.

13              Laura Ingraham asked her all of the questions that

14   Judge Lamberth had asked her about what she saw and what she

15   personally did.

16              Laura Ingraham asked her 40, 50 questions.  She

17   was able to say no, she didn't see any specific act of

18   violence; but then she learned about it.  She didn't see any

19   specific acts of vandalism, but then she learned about it.

20   She also talked about counsel and what I had advised her.

21   She also talked about the books she read.  She also talked

22   about her genuine remorse and why she cried in front of

23   Judge Lamberth.

24              Laura Ingraham, on air, then asked her four

25   questions without any follow-ups.  Did you participate in

1    any acts of violence?  No.

2              Did you break anything?  No.

3              Did you personally see any vandalism?  Not at the

4    time.

5              Did you personally commit -- see any acts of

6    violence?  Not at the time.

7              Then she asked her about books.  And when she

8    started to say that the books were good and educational, she

9    cut her off and ended the interview.

10             It wasn't a lack of remorse; it was her stupidity

11   to go on that forum.  And if the Court wants, I can send the

12   Court the letter that she wrote immediately after she was

13   played by Laura Ingraham.

14             Many forums have asked her to go on and explain

15   that; she was just so overwhelmed by what happened and with

16   the social media feeding on her that she did not want to be

17   interviewed.

18             I can tell you that during that time period I was

19   getting lots of hostile telephone calls from the far right

20   for brainwashing my clients.

21             I also got a telephone call from a librarian, in

22   Florida who wanted to give me additional books to give my

23   clients.  That librarian reached out to Ms. Lloyd and sent

24   her a packet of ten books, which Ms. Lloyd did not open

25   initially because she was afraid it contained a bomb because

1   she was getting a lot of hate mail.

2          When she verified that it was from a librarian she

3   opened it, and she has formed a relationship with that

4   librarian in Florida.  She has read the books.

5          She also completed her 120 hours of community

6   service within a month.  She also paid her restitution

7   within a month.  She was played.  And the only reason I did

8   not -- she didn't want to go back on the air and correct

9   what happened to her on air.

10          I have spoken to Mr. Feuer at the *New York Times*,

11   and he wants to interview her; but it's all too raw for her

12   right now, and she does not want to be interviewed.

13          Several of my clients who have expressed remorse

14   have been interviewed by the FBI and are being interviewed

15   by the house committee.  Ms. Lloyd at this time does not

16   want to because it's too upsetting to her.

17          My other clients are; Mr. Griffith would make

18   himself available.

19          I believed Ms. Lloyd was generally remorseful.  I

20   was shocked when the government sent me the video on FOX.

21   I was angry.  I felt humiliated.  I felt betrayed.  And

22   then, after I talked to her, I realized that it is very

23   difficult for an individual to appear on FOX News or even on

24   the other networks where they are really less interested in

25   the truth than they are interested in creating sensation and

 1   entertainment.

 2          All of the media reached out to me to be on there.

 3   And it's -- unless you can control what happens to you when

 4   you go on social media, and especially on TV, it's not a

 5   good idea, even for someone who is very smart and thinks

 6   they know what they're doing.  And, certainly, for Anna

 7   Lloyd it was a stupid, horrible idea.

 8          So that's what happened.

 9          THE COURT:  Thank you.

10          If you don't mind, I will send these pages of the

11   transcript to Judge Lamberth.

12          MS. SHANER:  That's fine.  And I can also send

13   Judge Lamberth her letter; I just haven't because he never

14   questioned it since it occurred.

15          THE COURT:  All right.  Is there anything further?

16          MS. SHANER:  No, Your Honor.  Thank you.

17          THE COURT:  Okay.  Mr. Griffith, this is your

18   opportunity to speak directly to me if you wish, and you can

19   stand up at the podium.

20          THE DEFENDANT:  Yes, Your Honor.  Thank you.

21          I would like just to, if I may, read some of this

22   letter I wrote because I think it's a good outline and, if

23   you would, ask me some questions or anything like that.

24          Your Honor, I write this letter as a response to

25   the government request for incarceration.

## **<u>CERTIFICATE</u>**

I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
certify that the foregoing constitutes a true and accurate
transcript of my stenographic notes, and is a full, true,
and complete transcript of the proceedings to the best of my
ability.

This certificate shall be considered null and void
if the transcript is disassembled and/or photocopied in any
manner by any party without authorization of the signatory
below.

Dated this 30th day of October, 2021.

<u>/s/ Elizabeth Saint-Loth, RPR, FCRR</u>

Official Court Reporter

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

IN RE PRESS COALITION'S MOTION FOR
ACCESS TO COMMUNITY SERVICE
RECORDS

Case No.

**[PROPOSED] ORDER**

Upon consideration of the Press Coalition's Motion for Access to Community Service

Records, any response(s) thereto, and the entire record herein, it is hereby **ORDERED** that:

1.      The Motion for Access is GRANTED; and

2.      The Clerk of the Court shall release the Community Service Records to the Press

Coalition immediately.

**SO ORDERED.**

_____
United States District Judge