UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE PRESS COALITION'S MOTION
FOR ACCESS TO COMMUNITY
SERVICE RECORDS

Case No. 1:21-mc-155-RCL

**MEMORANDUM OPINION**

Before the Court is an application filed by a group of news media organizations (the "Press Coalition") for access to the community service records of a defendant convicted and sentenced for her participation in the unsuccessful insurrection at the U.S. Capitol on January 6, 2021. *See* Mot. for Access to Community Service Records ("Appl."), ECF No. 1. The government takes no position on the Press Coalition's request. *See* Gov. Resp., *United States v. Morgan-Lloyd*, No. 21-cr-164 (RCL) (D.D.C. Dec. 12, 2020), ECF No. 32 [hereinafter Gov. Resp.]. But the defendant, Anna Morgan-Lloyd, opposes. *See* Def.'s Resp., *United States v. Morgan-Lloyd*, No. 21-cr-164 (RCL) (D.D.C. Dec. 22, 2021), ECF No. 33 [hereinafter Def.'s Resp.].

Upon consideration of the parties' filings,[1] applicable law, and the entire record herein, the Court will **DENY** the Press Coalition's application.

**I.  BACKGROUND**

On June 23, 2021, this Court sentenced Morgan-Lloyd for her role in the events at the U.S. Capitol on January 6, 2021. *See* 6/23/2021 Min. Entry, *United States v. Morgan-Lloyd*, No. 21-cr-164 (D.D.C.). The Court sentenced Morgan-Lloyd to thirty-six months of probation and

---

[1] The Court considered ECF Nos. 1, 3, 4, and 4-1 filed on this case's docket; Gov. Resp.; Def.'s Resp.; Def.'s Mot. to Adopt & Conform, No. 21-cr-164 (D.D.C. Jan. 1, 2022), ECF No. 34; and Def.'s Mem. in Support ("Def.'s Mem."), No. 21-cr-164 (D.D.C. Jan. 1, 2022), ECF No. 34-1.

ordered her to complete 120 hours of community service as a special condition of her supervision. J. in a Crim. Case, *United States v. Morgan-Lloyd*, No. 21-cr-164 (D.D.C. June 29, 2021), ECF No. 29.

On December 21, 2021, the Press Coalition filed an application for access to Morgan-Lloyd's community service records. *See* Appl. Specifically, the Press Coalition "seeks the release of records reflecting how [Morgan-Lloyd] has completed the 120 hours of community service that the Court ordered her to perform as a condition of her probation." *Id.* at 6. The public need for access to these records is "great," the Press Coalition contends, because "(1) Morgan-Lloyd was the first defendant to be sentenced for participating in the Capitol riot, . . . and (2) shortly after apologizing to this Court for her actions on January 6, [Morgan-Lloyd] downplayed the riot on national television, raising doubts about the sincerity of her contrition and of her acknowledgment that she owes a debt to the community." *Id.* at 6–7; *see United States v. Chansley*, No. 21-cr-3 (RCL), 2021 WL 4133655, at *4 n.3 (D.D.C. Sept. 10, 2021) (noting that "a day after sentencing, another January 6 defendant made statements in an interview that directly conflicted with the contrite statements she made to the undersigned"). The Court ordered the government and defendant to respond to the application and ordered the Probation Office to transmit the requested documents to the undersigned's chambers for review *in camera*. Order, ECF No. 31.

The government takes no position on the Press Coalition's application. *See* Gov. Resp. But Morgan-Lloyd opposes release of the community service records and contends that these records are "collected with the understanding the information will be confidential." Def.'s Resp. 1. The Press Coalition filed a reply in support of its request. ECF No. 3.

Shortly thereafter, Morgan-Lloyd moved to "adopt and conform" arguments made by January 6 defendants Thomas and Lori Vinson in opposition to a similar application by the Press

Coalition for the Vinsons' community service records. *See* Mot. to Adopt & Conform; Def.'s Mem.[2] This opposition argues that the community service records are not judicial records subject to disclosure, but even if they were, other interests mitigate against the presumption of disclosure. *See* Def.'s Mem. 2–11. The Press Coalition responded by filing its reply from the Vinsons' case. *See* ECF No 4; Ex. 1—Reply In Support of Access Mot. in 21-mc-166 ("Sur-Resp."), ECF No. 4-1.

The Press Coalition's application is now ripe for review.

## II.     DISCUSSION

The Press Coalition's request invokes the common-law right of public access to judicial records. Courts in this country have long recognized a general right to inspect and copy public records and documents, which include judicial records and documents. *See, e.g.*, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). The "common-law right of public access to judicial records 'is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch.'" *United States v. Munchel*, No. 1:21-cr-118-RCL, 2021 WL 4709745, at *2 (D.D.C. Oct. 8, 2021) (quoting *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1127 (D.C. Cir. 2020)). But to determine whether this important right is implicated, the Court must first ask whether "judicial records" are at issue. *Id.* at *3. Here, that question is dispositive. Morgan-Lloyd's community service records are not judicial records, so the common-law right of access does not apply. The Court will accordingly **DENY** the Press Coalition's application.

---

[2] Because the Court considered these arguments, the Court will issue a separate order granting Morgan-Lloyd's motion to adopt and conform.

3

The D.C. Circuit has explained that the right to inspect judicial records "is a species of the right to inspect public records." *United States v. El-Sayegh*, 131 F.3d 158, 161–62 (D.C. Cir. 1997) (citing *Nixon*, 435 U.S. at 597). Public records are documents "created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived." *Wash. Legal Found. v. U.S. Sent'g Comm'n* (*WLF II*), 89 F.3d 897, 905 (D.C. Cir. 1996). Generally, "documents that are preliminary, advisory, or, for one reason or another, do not eventuate in any official action or decision being taken" are excluded from the definition of public records. *Id.* But judicial records fall outside of this exclusion for "preliminary" or "advisory" records because "[a] court proceeding . . . is in its entirety and by its very nature a matter of legal significance" and "the meaning and legal import of a judicial decision is a function of the record upon which it was rendered." *Id.* at 906; *see El-Sayegh*, 131 F.3d at 161–62.

This Court recently explained that whether something qualifies as a "judicial record" depends on the role it plays in the adjudicatory process. *Munchel*, 2021 WL 4709745, at *3 (citing *In re Leopold*, 964 F.3d at 1128). If a court makes no decision about a document or does not otherwise rely on it, the document is not a judicial record. *S.E.C. v. Am. Int'l Grp.*, 712 F.3d 1, 4 (D.C. Cir. 2013); *accord El-Sayegh*, 131 F.3d at 162 ("This principle, of course, assumes a judicial decision. If none occurs, documents are just documents; with nothing judicial to record, there are no judicial records."). And even if an applicant identifies a decision, documents that were never part of the court record are not judicial records. This is because a judicial decision "is a function of the underlying record," so "if a document was never part of that record, it cannot have played any role in the adjudicatory process." *Am. Int'l Grp.*, 712 F.3d at 4. Accordingly, while "filing a

4

document with the court is not sufficient to render the document a judicial record, it is very much a prerequisite." *Id.*

Here, Morgan-Lloyd's community service records have played *no* role in the adjudicatory process. The Press Coalition contends that community service records are judicial records because they "influence how courts discharge their responsibility to oversee probation" and "thus play an indispensable role in the adjudicatory process." Sur-Resp. 2–3. The Court is not persuaded. These records might carry the *potential* to "inform and influence" the Court's decision-making because probation officers "must report the information to the court." *Id.* at 3 (emphasis removed) (quoting 18 U.S.C. § 3603(2)). But the Court has not made any decision about these records—for example, whether Morgan-Lloyd has satisfied the special conditions imposed at sentencing. Neither has the Court relied on them for any other purpose, save the present application. Indeed, it is not possible that these community service records could have played any role in the adjudicatory process because they were never filed with the Court until the Court requested them for review *in camera*.[3] Because Morgan-Lloyd's community service records have "played no role in any adjudicatory function—save, of course, those functions relating to [their] very disclosure," they are not judicial records. *El-Sayegh*, 131 F.3d at 163.

The Press Coalition emphasizes the Probation Office's role as an "entity in the judicial branch." Sur-Resp. 2–3 (quoting *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994). But that is not enough to transform these documents into judicial records.

---

[3] Each of these facts makes the community service records fundamentally different from the presentence reports at issue in *In re Nichter*, on which the Press Coalition relies. *See* Appl. 8 (citing *In re Nichter*, 949 F. Supp. 2d 205, 208 (D.D.C. 2013) (Lamberth, J.)); *see also* Sur-Resp. 5 (same). Presentence reports are *filed* with the court to aid its sentencing decision. *See In re Nichter*, 949 F. Supp. 2d at 208. And an imposed sentence is necessarily *about* the contents of the presentence report, even if the sentencing court does not cite it. *See Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 667 (D.C. Cir. 2017) (explaining that a filing "can affect a court's decisionmaking process even if the court's opinion never quotes or cites it"); 18 U.S.C. § 3553(a)(1) (requiring the sentencing court to consider "the nature and circumstances of the offense and history and characteristics of the defendant").

The only "judicial records" to which the D.C. Circuit has not specifically applied the aforementioned filing or decisional requirements are court dockets and transcripts. *See In re Leopold*, 964 F.3d at 1129; *WLF II*, 89 F.3d at 905–06. Nevertheless, the focus of the inquiry remains the same: it is the role of a document in the adjudicatory process that controls whether it is a "judicial record," not the document's creator. *See In re Leopold*, 964 F.3d at 1128. While judges may not always rely upon dockets in reaching decisions, dockets are "created and kept [by courts] for the purpose of memorializing or recording . . . all the proceedings and filings in a court case", which is, "by definition[,] a 'matter of legal significance.'" *Id.* (first alteration in original) (internal quotation marks and citations omitted). It would make "little sense to provide public access to court documents but not to the indices that record them and thus make them accessible." *Id.* Similarly, transcripts "are maintained as the official 'record' of what transpired" *during* the adjudicatory process. *WLF II*, 89 F.3d at 906.

But Morgan-Lloyd's community service records provide no similar record of judicial decision-making. They do not increase accessibility to other court documents. They do not tell the public "what transpired" during the adjudication of Morgan-Lloyd's criminal case. *Id.* At bottom, they provide no information to the public about how the Court reached a particular decision.

Indeed, the Court's *in camera* review confirms how attenuated Morgan-Lloyd's community service records are from the adjudicatory process. These records are almost entirely filled out by Morgan-Lloyd and supervisors at the various sites where she completed her community service. It is then incumbent on the Probation Office to ensure the accuracy of the records, to evaluate whether Morgan-Lloyd has complied with the Judgement in her case, and to determine what information should be reported to the Court. At most, Morgan-Lloyd's community

6

service records are "preliminary materials" on which a probation officer might rely or "writings incidental to the decision itself"—a decision more likely to be memorialized and reflected by the recommendation and report that the officer might submit to the Court. *Id.* at 905–06.

The Court's conclusions are also bolstered by considering the principles underlying the common-law right of public access. The reason that the common-law right—and the accompanying presumption of access—extend to judicial records is so that the public can have confidence in judicial decisions by weighing the testimony and documents that are used in the performance of Article III decision-making. *See United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995); *Munchel*, 2021 WL 4709745, at *2 (explaining that the common-law right is "important to maintaining the integrity and legitimacy of an independent Judicial Branch" (quoting *In re Leopold*, 964 F.3d at 1127)). These ends are not served by release of community service records when there is no corresponding judicial decision for the public to evaluate.

Accordingly, the Court concludes Morgan-Lloyd's community service records are not judicial records subject to disclosure. The Court need not apply the balancing test set forth by the D.C. Circuit in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980). *See Am. Int'l Grp.*, 712 F.3d at 3, 5.

### III.   CONCLUSION

Based on the foregoing, the Court will deny the Press Coalition's application by separate order.

Date: 1/26/22

Royce C. Lamberth
United States District Judge